UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:03CV-195-R

KATHY CONNER                                                           PLAINTIFF

v.

STATE FARM MUTUAL                                              DEFENDANT
AUTOMOBILE INSURANCE
COMPANY

## MEMORANDUM OPINION

This matter comes before the Court on Defendant State Farm Mutual Automobile

Insurance Company's Motion for Summary Judgment (Docket #17).  The Plaintiff, Kathy

Conner, has responded (Docket #23), and the Defendant has replied and filed an amended reply,

respectively (Dockets #27 & #31).  Subsequently, the Plaintiff filed a supplemental response

(Docket #37), and the Defendant submitted a supplemental memorandum of law (Docket #40).

This matter is now ripe for adjudication.  For the following reasons, the Defendant's Motion for

Summary Judgment is **DENIED**.

## BACKGROUND

This matter involves an employment dispute over whether or not the Defendant

discriminated against the Plaintiff on the basis of age when the Defendant selected younger

candidates to fill two open vacancies.  In early 2003, the Plaintiff, Kathy Conner ("Conner") was

employed by the Robert Teague ("Teague") State Farm Agency ("Teague Agency").  At that

time she was forty-seven (47) years old, and had been working for a State Farm Agency since

1981.  During those last eight (8) years (1995-2003) Conner served as an Office Manager for the

Teague Agency, though she had performed similar duties before 1995.  These duties included:

discussing marketing plans with Teague; training new employees; dealing with customers; and

holding licenses to sell state life, health, property and casualty insurance.

By October 2002, Teague had notified the Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), that he would retire as an approved candidate to be an agent for the Defendant in 2003. Conner informed Teague that she wanted to apply for his position as an agent in either the Albany or Burkesville offices. Ultimately, the positions went to Lisa Beard ("Beard"), age thirty-six (36), and Wade Flowers ("Flowers"), age thirty-five (35), respectively. Conner argues that this happened because of age discrimination.

State Farm has an in depth selection and screening process to determine approved candidates who may become State Farm agents. Conner was invited by State Farm to participate in this process that takes place over the course of several months. The process starts with a "screening phase," which includes completion of a background check, credit check, and the submission of a written career profile. Conner passed the initial screening process and advanced to the candidate approval phase. Conner completed all of the exercises of this phase that included the agency field visit, preparing a business plan and community profile, submitting an autobiography, and completing a personal financial statement and balance sheet. State Farm also looked for eleven (11) qualities when assessing these projects. By all accounts, Conner did well in the screening phase and the events leading up to panel interview. State Farm concluded the process with forty-five (45) minute panel interview where they evaluated nine (9) competencies.

During her interview, which was overseen by State Farm Vice President of Agency, Dan Brooks ("Brooks"), Conner did not use a Powerpoint, though she claims she was told she did not have to use it. In addition, she was told that she appeared "nervous" and could have come off stronger. As mentioned, State Farm decided not to hire Conner for the position with the main

reason being State Farm felt that Conner's performance during the interview was "below par." State Farm also felt that Conner needed to "grow" in the areas of: leadership skills; business savvy; interview skills; competition and drive.  At this point, Conner recognized that the agents hired by State Farm were younger.  In addition, after the hiring process, State Firm asked Conner to help train Beard in running the agency.

Conner alleges that Teague as well as Ralph Dillahay ("Dillahay"), another State Farm employee, assisted Beard during the selection process by helping her prepare for her interview and her business plan.  Conner claims that Teague would not help her with her business plan and during the course of the selection process did not offer her much assistance.  The interview was over seen by Brooks.  Based on that interview and all the other phases of the selection process Brooks made the final decision as to whether the applicant would be accepted as an approved candidate.  Scoring sheets with set criteria were used by the panel to grade the applicant in certain areas, rating them with a number of one (1) through five (5), with one (1) being the lowest and five (5) the highest.  An average score below three (3) raised a "red flag," but the Brooks said he would also look to the other phases in the selection process should that happen. The individual and collective scoring sheets of Conner are available, however, unexplainably, the individual and collective interview sheets for Beard and Flowers are not available.  Conner's sheets indicate that she was evaluated collectively at an average below three (3).

Conner argues that the reason she did not get the agency intern position was because of her age.  She notes that she had more hands-on experience. Additionally, when Conner worked at another field station in Tennessee State Farm Agent Elwood Erwin ("Erwin") during the selection process, he had nothing but positive comments to say about her.  Erwin noted that

"[y]ears of experience showed through.  She has no reluctance."  After not receiving the position

Conner brought an age discrimination suit against State Farm pursuant to the Kentucky Civil

Rights Act, KRS §344.040(1).  State Farm denies this claim arguing that the Plaintiff was not

"otherwise qualified," and even if she was, State Farm had a legitimate non-discriminatory

reason for its business decision.  The Plaintiff counters this argument by State Farm arguing

there is no evidence that the other applicant were equal or better qualified than her, and she has

offered statistical analysis in attempt to demonstrate the age discriminatory tendencies of State

Farm.  State Farm argues that the statistics fail to raise a genuine issue of fact that Conner's non-

selection was age-based.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can

establish that the "pleadings, depositions, answer to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  In determining whether

summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable

inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the

party bearing the burden of proof has presented a jury question as to each element in the case."

*Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere

scintilla of the evidence.  To support his position, he must present evidence on which the trier of

4

fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)."  *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The Kentucky Civil Rights Act ("KCRA"), KRS §344.040(1), states in pertinent part:

> It is an unlawful practice for an employer: (1) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, *age forty (40)* and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking (emphasis added).

Both parties have recognized that in age discrimination cases, Kentucky follows the burden shifting analysis standard applied by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* standard, the Plaintiff must first establish a *prima facie* case of age discrimination by showing: 1) that he/she belongs to the statutory protected class, which in this case is over the age of forty (40) at the time of the alleged discrimination; 2) he/she performed his/her job satisfactorily (was otherwise qualified for the

position); 3) he/she was subject to an adverse employment decision and 4) and the adverse decision resulted in a younger person taking the position of the plaintiff. *McDonnell Douglas* at 802-805; *Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226, 230 (Ky. App. 1984).  If the plaintiff can meet this initial hurdle, the burden then shifts to the employer who must then state with clarity their legitimate reason for the adverse decision. *Harker*, 679 S.W.2d at 230.  If the employer offers a legitimate reason, than the burden shifts back to the plaintiff who must then show that he/she is the victim of intentional discrimination and the employer's reasons were pretextual. *Id.* at 230; *Kentucky Center for the Arts v. Handley*, 827 S.W.2d 697, 700-701 (Ky. App. 1991).

To meet this final burden the plaintiff must offer direct or circumstantial evidence that rebuts the reasoning offered by the employer. *Handley*, 827 S.W.2d at 700-701; *Kentucky Department of Corrections v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003) *citing Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1973).  Direct evidence consists of evidence, "which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *McCullough*, 123 S.W.2d at 135.  Circumstantial evidence is "evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Id.* Although the burden of proof may be on the plaintiff to meet this final standard, in a civil rights case the Plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his[/her] rejection were in fact a coverup for a....discriminatory decision." *McDonnell Douglas* at 805.  The Court will address each stage of this shift burden standard to determine whether or not genuine issues of material fact exists in the

instant matter.

### *Whether Conner has met her prima facie case*

Under the *McDonnell Douglas* standard, Conner must satisfy four (4) elements in order to meet her initial burden in establishing a *prima facie* case. Conner has met three of the elements by virtue of the undisputed facts of this case. First, that she was in the protected class at the time of the decision (age forty-seven (47)); Second, that the adverse decision was made by State Farm in denying her the position; and Third, a younger person(s) got the position she desired. That leaves the second element, which analyzes whether or not Conner was otherwise qualified for the position. State Farm asserts that Conner was not "otherwise qualified" at the time she applied for the position because she has not proven that could have performed the job at State Farm's expectations. State Farm argues that in order for Conner to meet this element, she "must demonstrate that she was meeting her employer's legitimate expectations and was performing to her employer's satisfaction." *Warfield v. Lebannon Correctional Inst.*, 181 F.3d 723, 729 (6th Cir. 1999).

State Farm argues that Conner has not shown that she was otherwise qualified because all that she has offered is her opinion about her performance, and that Brooks' decision was based on his business judgment about Conner not meeting the qualifications. However, the facts submitted by both parties demonstrate at least a jury issue as to whether Conner was qualified for the position at that time; as to whether Conner was better qualified goes to the issue of pretext that will be discussed later. Aside from her numerous years of experience mentioned *supra* as well as the fact that Conner was familiar with the area where she wished to become an eventual agent for State Farm, State Farm had asked Conner to go through the screening process and then

7

let her go to the final round.  As noted earlier, by all accounts Conner had performed well up until the final round interview.  All portions of the selection process were intended to be used in the final evaluation.  Her score in the interview was low, but we do not know the scores of the other candidates.  To now argue that as a matter of law Conner was not otherwise qualified at that time goes counter to the actions of State Farm in 2003.  Further, Conner's performance while working for Teague and for Erwin in Tennessee speaks to Conner's abilities to qualify for the position.  Lastly, the fact that Teague and State Farm asked Conner to stay on to help Beard with the transition goes to show that State Farm wanted Conner in some capacity related to the position.

Though Brooks may have arguably used his business judgment in making his decision, that does not go to the qualifications of Conner.  Particularly, in light of the lost score sheets of the other candidates. As such, this Court finds that Conner has met her *prima facie* case. Therefore, the burden shifts to State Farm to show their legitimate non-discriminatory reason not to hire Conner.

### *Whether State Farm has stated a legitimate non-discriminatory reason for its decision not to hire Conner*

State Farm argues that its business decision not to hire Conner was legitimate.  The reasoning behind State Farm's decision to not hire Conner came from her interview where she received low marks, as well as her nervous demeanor and presentation skills.  In her response Conner does not directly address this stage, but it appears that she acknowledges that on the surface the reasons for State Farm not hiring her were nondiscriminatory.  The Sixth Circuit Court of Appeals, in *Tate v. Shelby County Road Department*, determined that "hirer must be

8

entrusted with some hiring discretion to weigh experience, education and intangible qualities to select the appropriate job candidate." *Tate v. Shelby County Road Department*, 215 F.3d 1327 (Table Opinion) at 5 (6th Cir. 2000). The reason given by State Farm was a legitimate non-discriminatory reason not to hire Conner. On its face, State Farm has exercised business discretion through the comments and actions of the interview panel. Therefore, State Farm has stated a legitimate non-discriminatory reason for its decision not to hire Conner. As such, the burden once again shifts back to the Plaintiff who must show the existence of discrimination by demonstrating through direct or circumstantial evidence that the reasons offered were pretextual under the circumstances.

### *Whether State Farm's reason is a pretext for intentional discrimination*

State Farm contends that no factual dispute exists as to whether or not the Defendant intentionally discriminated against Conner because of her age. State Farm argues that Conner cannot challenge the business judgment of Brooks to demonstrate pretext. *Brocklehurst v. PPG Indus.*, 123 F.3d 890, 898 (6th Cir. 1997). Further, State Farm asserts that the Plaintiff does not offer concrete evidence to show pretext on the part of the Defendant, rather that she only offers her opinions as to her qualifications and an alleged conspiracy that does not have merits. State Farm stresses that even if Conner was qualified, that does not mean that State Farm discriminated against her because of her age. The Defendant also emphasizes that this Court should not act as a "super-personnel department" by overturning legitimate business decisions.

Conner counters that State Farm worked with Beard and Flowers through Teague and Dillahay to ensure that they received assistance throughout the screening process. To this effect, the Plaintiff notes that both Teague and Dillahay did not directly answer questions in depositions

9

concerning their involvement with Beard and Flowers throughout the application process. Additionally, the files concerning Beard and Flowers have not been put forth by the Defendant because they are allegedly missing.  The Plaintiff also argues that she was more qualified than Beard, and that after not hiring her State Farm asked her to stay on in her current position to assist Beard on the transition process of becoming an agent.  Conner contends that this circumstantial evidence demonstrates that a genuine issue of material fact exists as to whether or not State Farm's decision not to hire Conner was pretextual.  The Plaintiff also offers statistical evidence to show that non-State Farm employee applicants over the age of forty (40) had a lower success rate than those under forty (40).

State Farm dismisses these arguments as opinion evidence.  State Farm also suggests that the statistical data offered by Conner is not on point because: they do not examine the specific position that Conner sought; they do not go to the issue of the intent of the employer in regards to discrimination at this particular instance; and the fact that the Sixth Circuit has determined that statistics alone do not raise any genuine issues that challenge that an employment decision was motivated by discrimination.

In offering circumstantial evidence to meet this burden, Conner must show that the protected activity was *likely* the reason for the adverse decision. *McCullough* at 135.  In reaching this threshold, the Court once again looks to the Kentucky Court of Appeals decision in *Kentucky Center for the Arts v. Handley*, a KCRA case alleging racial and sexual discrimination over a hiring decision, where the Court determined:

> after careful review of the record, we are unable to find any evidence that Ms.
> Handley was the victim of racial or sexual discrimination. *The crux of the defense
> is*, that while Ms. Handley was qualified for the position, Mr. Craven was objectively
> better qualified and Mr. Metcalf's superior personal attributes rendered him more

10

suitable for the position than Ms. Handley.

*Handley* at 701 (emphasis added).  In the instant matter, the Court cannot conduct a complete and thorough review in support of State Farm's argument because the individual rating forms for Beard and Flowers have disappeared.  The Court has no basis to compare the candidates as the Court in *Handley* was able to do.  The reasoning offered by State Farm, though plausible, raises suspicion as to their intentions especially because of the emphasis State Farm places on the interview process that they claim determined their decision not to hire Conner.  If the importance of the interview, as argued by Defendant, determined their decision not to hire Conner, then that interview process should also support their decision to hire both Beard and Flowers.

This lack of evidence complimented by both the fact that State Farm asked Conner to stay on with them in order to help train and assist Beard in her new position, Conner's good performance at all the other phases of the selection process, and the statistical analysis suggests that it may be likely Conner was not hired because of her age.  Though the Court agrees with the Defendant that the statistics *alone* do not raise a genuine issue that a decision was pretextual, in this instance the statistics may be a part of the other circumstantial evidence offered by Conner.  *Barnes v. GenCorp*, 896 F.2d 1457, 1466 (6th Cir.1990); *Ballor v. Alcona County Road Com'n*, 145 F.3d 1329 (Table Opinion) at 3 (6th Cir. 1998).

The Court does not challenge the business decision by State Farm, however, the Court cannot sustain that decision without evidence as to how and why they reached that decision.  The evidence requires more than the testimony of Brooks, whose memory, arguably, was not the most accurate at times during his deposition.  State Farm has evidence corroborating the poor performance of Conner during her interview, but they also have evidence corroborating her good

11

performance prior to the interview throughout the selection process.  There is no corroboration of evidence that the other candidates were "better" or "equally" qualified as Conner, nor is there any evidence as to their performances during the selection process.   Should evidence concerning the individual rating forms of Beard and Flowers from their interviews appear at the close of evidence, the Court would likely reexamine its present decision at that juncture.  Without this evidence, and looking at the facts in light most favorable to the non-moving party, a genuine issue of fact exists as to whether or not the decision not to hire Conner was pretextual.  The Court reaches this decision regardless of the admission of the statistical evidence, which will be addressed in a separate order.  Therefore, based upon the current evidence, the finder of fact should determine if the decision not to hire Conner was a pretext for age discrimination.

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **DENIED**.  An appropriate order shall issue.