UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:03CV-195-R

KATHY CONNER                                                                                          PLAINTIFF

v.

STATE FARM MUTUAL                                                                                DEFENDANT
AUTOMOBILE INSURANCE
COMPANY

### MEMORANDUM OPINION

This matter comes before the Court on the Defendant's renewed motion for summary judgment (Docket #71). The Plaintiff has responded to this motion (Docket #75), and the Defendant has replied to that response (Docket #77). This matter is now ripe for adjudication. For the following reasons, the Defendant's motion for summary judgment is **GRANTED**.

### BACKGROUND

The basic facts underlying this litigation have not changed since the Court's initial memorandum opinion on this matter, dated February 8, 2006 (Docket #42). The facts were stated as follows:

"This matter involves an employment dispute over whether or not the Defendant discriminated against the Plaintiff on the basis of age when the Defendant selected younger candidates to fill two open vacancies. In early 2003, the Plaintiff, Kathy Conner ("Conner") was employed by the Robert Teague ("Teague") State Farm Agency ("Teague Agency"). At that time she was forty-seven (47) years old, and had been working for a State Farm Agency since 1981. During those last eight (8) years (1995-2003) Conner served as an Office Manager for the Teague Agency, though she had performed similar duties before 1995. These duties included: discussing marketing plans with Teague; training new employees; dealing with customers; and

holding licenses to sell state life, health, property and casualty insurance.

By October 2002, Teague had notified the Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), that he would retire as an approved candidate to be an agent for the Defendant in 2003.  Conner informed Teague that she wanted to apply for his position as an agent in either the Albany or Burkesville offices.  Ultimately, the positions went to Lisa Beard ("Beard"), age thirty-six (36), and Wade Flowers ("Flowers"), age thirty-five (35), respectively.  Conner argues that this happened because of age discrimination.

State Farm has an in depth selection and screening process to determine approved candidates who may become State Farm agents.  Conner was invited by State Farm to participate in this process that takes place over the course of several months.  The process starts with a "screening phase," which includes completion of a background check, credit check, and the submission of a written career profile.  Conner passed the initial screening process and advanced to the candidate approval phase.  Conner completed all of the exercises of this phase that included the agency field visit, preparing a business plan and community profile, submitting an autobiography, and completing a personal financial statement and balance sheet.  State Farm also looked for eleven (11) qualities when assessing these projects.  By all accounts, Conner did well in the screening phase and the events leading up to panel interview.  State Farm concluded the process with forty-five (45) minute panel interview where they evaluated nine (9) competencies.

During her interview, which was overseen by State Farm Vice President of Agency, Dan Brooks ("Brooks"), Conner did not use a Powerpoint, though she claims she was told she did not have to use it.  In addition, she was told that she appeared "nervous" and could have come off stronger.  As mentioned, State Farm decided not to hire Conner for the position with the main

reason being State Farm felt that Conner's performance during the interview was "below par." State Farm also felt that Conner needed to "grow" in the areas of: leadership skills; business savvy; interview skills; competition and drive. At this point, Conner recognized that the agents hired by State Farm were younger. In addition, after the hiring process, State Firm asked Conner to help train Beard in running the agency.

      Conner alleges that Teague as well as Ralph Dillahay ("Dillahay"), another State Farm employee, assisted Beard during the selection process by helping her prepare for her interview and her business plan. Conner claims that Teague would not help her with her business plan and during the course of the selection process did not offer her much assistance. The interview was over seen by Brooks. Based on that interview and all the other phases of the selection process Brooks made the final decision as to whether the applicant would be accepted as an approved candidate. Scoring sheets with set criteria were used by the panel to grade the applicant in certain areas, rating them with a number of one (1) through five (5), with one (1) being the lowest and five (5) the highest. An average score below three (3) raised a "red flag," but the Brooks said he would also look to the other phases in the selection process should that happen. The individual and collective scoring sheets of Conner are available, however, unexplainably, the individual and collective interview sheets for Beard and Flowers are not available. Conner's sheets indicate that she was evaluated collectively at an average below three (3).

      Conner argues that the reason she did not get the agency intern position was because of her age. She notes that she had more hands-on experience. Additionally, when Conner worked at another field station in Tennessee State Farm Agent Elwood Erwin ("Erwin") during the selection process, he had nothing but positive comments to say about her. Erwin noted that

"[y]ears of experience showed through. She has no reluctance." After not receiving the position Conner brought an age discrimination suit against State Farm pursuant to the Kentucky Civil Rights Act, KRS §344.040(1). State Farm denies this claim arguing that the Plaintiff was not "otherwise qualified," and even if she was, State Farm had a legitimate non-discriminatory reason for its business decision. The Plaintiff counters this argument by State Farm arguing there is no evidence that the other applicant were equal or better qualified than her, and she has offered statistical analysis in attempt to demonstrate the age discriminatory tendencies of State Farm. State Farm argues that the statistics fail to raise a genuine issue of fact that Conner's non-selection was age-based."

> In its memorandum opinion, the Court also stated:
>
> [s]hould evidence concerning the individual rating forms of Beard and Flowers from their interviews appear at the close of evidence, the Court would likely reexamine its present decision at that juncture. Without this evidence, and looking at the facts in a light most favorable to the non-moving party, a genuine issue of fact exists as to whether or not the decision not to hire Conner was pretextual.

Since the Court issued its opinion, State Farm has submitted records concerning the rating forms of Beard and Flowers, as well as the other successful and unsuccessful candidates during the interview process. Of the nine categories (including: 1) taking charge; 2) driving results; 3) managing time; 4) influencing others; 5) coachability; 6) doing the right thing; 7) independence and self-reliance; 8) self-confidence; and 9) motive to be a State Farm Agent) where State Farm judged the candidates during their interviews, Connor averaged the following scores: 1,7; 2; 2.3; 2.3; 3.3; 4; 2.1; 1.7 and 1.6. In comparison, Lisa Beard averaged: 3.9; 3.9; 3.7; 3.3; 3.9; 3.9; 3.9; 4 and 3.3, scoring higher than Connor in 8/9 categories. Wade Flowers, the other candidate who received a position desired by Connor, averaged: 4.1; 3.9; 4.3; 4; 3.7; 5; 3.9; 4; and 4.9, scoring

higher than Connor in all nine categories.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of the evidence.  To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in

*Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

### DISCUSSION

In taking into account the previous analysis by the Court in its initial memorandum opinion, the only issue remaining for the Court to address in the renewed motion for summary judgment is the final step of the *McDonnell Douglas* standard, which analyzes whether the Plaintiff can show that she is the victim of intentional age discrimination by demonstrating that State Farm's reasons not to hire her were pretextual discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973); *Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226, 230 (Ky. App. 1984); *Kentucky Center for the Arts v. Handley*, 827 S.W.2d 697, 700-701 (Ky. App. 1991). State Farm argues that Conner cannot challenge the business judgment of Brooks to demonstrate pretext. State Farm cites the case of *Brocklehurst v. PPG Indus.*, where the Sixth Circuit Court of Appeals held that it was incorrect to allow a jury to judge the fairness of a business decision by the employer when considering whether or not the employer had pretext in allegedly discriminating against the plaintiff. *Brocklehurst v. PPG Indus.*, 123 F.3d 890, 898 (6th Cir. 1997). In *Acree v. Tyson Bearing Co., Inc.*, the Sixth Circuit again gave deference to the business judgment of an employer in the context of a discrimination case, stating, "[p]laintiffs, however, may not prove pretext by attacking the soundness of an employment decision."*Acree v. Tyson Bearing Co., Inc.*, 128 Fed. Appx. 419, 431 (6th Cir. 2005).

> In its initial memorandum opinion, the Court held:
>
> [t]he Court does not challenge the business decision by State Farm, however, the Court cannot sustain that decision without evidence as to how and why they reached

6

>that decision. The evidence requires more than the testimony of Brooks, whose memory, arguably, was not the most accurate at times during his deposition. State Farm has evidence corroborating the poor performance of Conner during her interview, but they also have evidence corroborating her good performance prior to the interview throughout the selection process. There is no corroboration of evidence that the other candidates were "better" or "equally" qualified as Conner, nor is there any evidence as to their performances during the selection process.

The interview scoring sheets of the other candidates, including Beard and Flowers, submitted by the Defendant allows this Court to conduct a complete and thorough review of State Farm's decision not to hire Connor. In doing so, the scoring sheets indicate that State Farm made a legitimate business decision not to hire Connor based on her score on the interview in comparison to the successful applicants.

On average, during the interview, Beard and Flowers scored much higher than Connor in almost all areas, with Connor only beating out Beard in one (1) out of the nine (9) possible scoring categories, by 0.1 points. Further, in comparison to the other six (6) successful applicants selected with Beard and Flowers, Connor's average scores are substantially lower in almost all of the areas. This evidence suggests that State Farm's decision not to hire Connor was a legitimate business decision that was not premised on pretextual age discrimination.

In its response to State Farm's renewed motion for summary judgment, Connor asserts that State Farm demonstrated pretext by: attacking the methods by which State Farm scored the candidates; the fact that State Farm has not produced the individual rating sheets of the winning candidates, only the collective average scoring sheets; the fact that none of the candidates who were over 40 were approved; and puts forward once again Connor's qualifications. Though all of these arguments go to supporting Connor's argument to the issue of pretext, these arguments do not counter the legitimate business reason offered by State Farm in not hiring the Plaintiff,

which was that Connor did not score as well in the interview as Beard and Flowers. The methods used to interview the candidates were fair and impartial, and in no way demonstrate a pretext for age discrimination. Further, the average scores of the candidates alone support the legitimate reason offered by State Farm in its decision not to hire Connor based on the interview because they show the blatant scoring discrepancy between Connor and the successful applicants. Connor was the only candidate who was over 40 when she interviewed, so the fact that no other protected individuals were hired does not show a pretext for age discrimination.

Finally, though Connor does have good credentials and experience working for State Farm agencies, State Farm put a strong emphasis on the interview process for the applicants. In its previous opinion, the Court held that the scores of the other candidates would be deciding factor as to whether or not Connor could satisfy her burden. Though State Farm was not forthcoming in producing these documents, these documents have nonetheless turned up, and they undoubtedly support the legitimate non-discriminatory business decision of State Farm not to hire Connor. Accordingly, the reasons for the decision not to hire Connor were not a pretext for age discrimination. Simply put, the decision not to hire Connor was a business decision of State Farm based on objective criteria.

## CONCLUSION

For the foregoing reasons as well as the previous memorandum opinion submitted by the Court, the Defendant's renewed motion for summary judgment is **GRANTED**.

An appropriate order shall issue.